Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000416
28-FEB-2022
07:55 AM
Dkt. 62 SO

NO. CAAP-21-0000416

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN RE SJ AND EJ

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 18-00246)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Hiraoka and Nakasone, JJ.)

Appellant Father (**Father**) appeals from the Order Terminating Parental Rights (**TPR Order**), filed on July 1, 2021 by the Family Court of the First Circuit (**Family Court**).[1] Father's parental rights to his child, EJ, were terminated, along with the parental rights of SJ, a half-sibling to EJ;[2] and a May 25, 2021 Permanent Plan (**Permanent Plan**) with a goal of adoption of both children was approved. FOF 35.

On appeal, Father challenges FOFs 65, 71, 72, 80, 81, and 85, and COL 13.[3] Father contends: (1) Father was not

---

[1] The Honorable John C. Bryant, Jr. presided. The Family Court filed Findings of Fact and Conclusion of Law (**FOFs** and **COLs**) pertaining to the TPR Order on August 9, 2021.

[2] Mother is the mother of SJ and EJ. FOFs 2 and 3. SJ and EJ have different fathers. FOFs 5 and 15. Mother and SJ's father both stipulated to termination of their parental rights and adoption. FOF 34. See In re Doe, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002) (unchallenged findings of fact are binding on appeal).

[3] The challenged FOFs and COL are as follows:

Findings of Fact

. . . .

65.   [FATHER] subjected the Children to neglect, threat of
(continued...)

[3](...continued)
abuse and threat of neglect due to his chronic substance abuse problem and inability to provide a safe family home for the Children.

. . . .

71.    Based upon the credible expert testimony of the [Department of Human Services (**DHS**)] DHS social worker JAHONA JACKSON, the problems preventing [FATHER] from being able to provide a safe home for the Children is his substance abuse, lack of contact with the DHS, and lack of participation in services. [FATHER] poses a risk of neglect, threat of neglect and threat of abuse to the Children. [FATHER] is not presently willing and able to provide the Children with a safe family home, even with the assistance of a service plan.

72.    [FATHER]'s failure to meaningfully engage in court ordered services and lack of progress in addressing the problems that necessitated the Children's removal in October 2018, in spite of the opportunity to do so over the preceding 33 months show that he will not become willing and able to provide a safe family home for the Children within the reasonably foreseeable future, even with the assistance of a service plan.

. . . .

80.    [FATHER] is not presently willing and able to provide [EJ] with a safe family home, even with the assistance of a service plan.

81.    [FATHER] will not become able to provide [EJ] with a safe family home within the reasonably foreseeable future, even with the assistance of a service plan.

. . . .

85.    Under the circumstances presented by the instant case, the DHS gave Mother, [], and [FATHER] every reasonable opportunity to succeed in remedying the problems which put the Children at substantial risk of being harmed in the family home and to reunify with the Children.

. . . .

Conclusions of Law

. . . .

13.    The Permanent Plan dated May 25, 2021, is in the best interests of the Child.

Father does not provide argument as to why FOFs 65, 71, 80 and 85 are clearly erroneous. See Rules Expediting Child Protective Appeals (**RECPA**) Rule 11(a)(4) (requiring legal argument for each point of error). Neither Father's points of error, nor the argument sections, address the subject matter of FOFs 65, 71, and 80, which deal with Father's present ability to provide a safe family home with the assistance of a service plan. The subject matter of FOF 85 (whether Father had reasonable opportunity to address the issues that created substantial risk of harm to the children and to reunify with the children) is not discussed within the points or the argument of Father's

(continued...)

2

given notice and an opportunity to challenge the "removal" of the Court Appointed Special Advocate (**CASA**) and Court Appointed Special Advocate Program (**CASA Program**) social worker and appointment of a new CASA, because the Family Court approved the change via an ex parte motion; (2) there was not clear and convincing evidence Father would not become willing and able to provide a safe family home within a reasonable period of time (FOFs 72 and 81); and (3) the Family Court erred by concluding the Permanent Plan was in the best interest of the children because there were insufficient facts to support the conclusion (COL 13).[4]

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Father's points of error as follows, and affirm.

(1) Father's contentions regarding lack of notice and opportunity to challenge the "removal"[5] of the CASA and CASA Program social worker, and appointment of a new CASA, are waived.

The court is required to appoint a guardian ad litem (**GAL**) to serve throughout the pendency of a Chapter 587A proceeding, to protect and promote the interests of the child. Hawaii Revised Statutes (**HRS**) §§ 587A-4, 587A-16(a). A CASA is a trained volunteer supervised by the CASA program, who may be appointed to serve as an officer of the court as a GAL. HRS § 587A-4. Father has not indicated how his contention was preserved for appeal, and where in the record he preserved it, as required by RECPA Rule 11(a)(3)(C). During a pretrial hearing on June 16, 2021, Father's counsel acknowledged receiving the May 18, 2021 order appointing a new CASA as the GAL, and stated he did not know why there was a change but only requested that the

---

[3](...continued)
Abbreviated Opening Brief. We do not address these FOFs.

[4]     We have reordered Father's points of error for clarity.

[5]     Father's characterization that it was a "removal" is not accurate, as the record reflects that it was a voluntary resignation based on the CASA's relocation. The Family Court accepted the former CASA's resignation on May 18, 2021 when it issued an Order Appointing Guardian Ad Litem for Minor Child, appointing a successor CASA for the children.

prior CASA Program social worker be made available for trial. Thus, the record reflects Father was notified of the change, Father did not object, and this point is waived. See State v. Hoglund, 71 Haw. 147, 150, 785 P.2d 1311, 1313 (1990) ("Generally, the failure to properly raise an issue at trial level precludes a party from raising that issue on appeal.").

(2)  There was clear and convincing evidence that it was not reasonably foreseeable Father would become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time not to exceed two years from the date the children entered foster custody.  HRS § 587A-33(a)(2) (2018).[6]

> When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a **reasonable factfinder** could have found it **highly probable** that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence . . . .
>
> The question before a court reviewing a finding that a fact has been proved by clear and convincing evidence is not whether the appellate court itself regards the evidence as clear and convincing; it is whether a reasonable trier of fact could have regarded the evidence as satisfying this standard of proof.

---

[6]    HRS § 587A-33(a) governs the termination of parental rights and provides in relevant part as follows:

> (a) At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:
>
> (1) A child's parent whose rights are subject to termination is not presently willing and able to provide the parent's child with a safe family home, even with the assistance of a service plan;
>
> (2) It is not reasonably foreseeable that the child's parent whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care; [and]
>
> (3) The proposed permanent plan is in the best interests of the child.

Matter of JK, 149 Hawaiʻi 400, 409-10, 491 P.3d 1179, 1188-89 (App. 2021) (emphasis added) (citations and formatting omitted). A family court's determination as to "whether it is reasonably foreseeable that a child's parent will become willing and able to provide a safe family home within a reasonable period of time," presents a mixed question of law and fact dependent on the facts and circumstances of the case; and such a determination is "reviewed on appeal under the clearly erroneous standard." In re Doe, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001) (citations, quotation marks, and brackets omitted).

> The family court's FOFs are reviewed on appeal under the clearly erroneous standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Id. (citations, quotation marks, and ellipsis omitted).

Here, the children entered foster custody on December 3, 2018. FOF 41. DHS first opened the case due to concerns for the children's stability and safety, domestic violence, and substance abuse. Father missed multiple court hearing dates. FOF 23. His default was set aside when he appeared at the January 27, 2021 hearing. Father did not complete his court-ordered psychological evaluation, and did not participate in individual therapy, parenting classes/education, and home-based outreach services. FOF 67. Father sporadically participated in substance abuse treatment and was admitted to the Hina Mauka Intensive Outpatient Substance Abuse Treatment Program in March 2021, but was discharged after about 18 days for failing to attend sessions and missing urinalysis appointments. FOFs 67 and 68. On July 1, 2021, trial was held on the Motion to Terminate Parental Rights, during which Father testified he was trying to get into a residential drug treatment program, and the last time he used marijuana and methamphetamine was two weeks prior.

Jahona Jackson (**Jackson**), the DHS social worker whose expert testimony the Family Court found credible, testified that:

Father was not currently willing and able to provide a safe family home, even with the assistance of a service plan; Father would not become able to do so within a reasonable period of time because Father lacked insight to address the concerns, did not participate in services, and did not obtain any of the tools, information, lessons, or skills in order to address the concerns that initiated DHS's involvement. See FOFs 82, 88, and 91. The Family Court found in FOF 92, that Father "admitted that he had not completed the court-ordered services and that he would be starting from the beginning despite having 33 months to make the necessary changes." Thus, the record contains substantial evidence from which the Family Court could find that it was highly probable that it was "not reasonably foreseeable" that Father would become able to provide a safe family home within a reasonable period of time not exceeding two years. See HRS § 587A-33(a)(2); Matter of JK, 149 Hawaiʻi at 409-10, 491 P.3d at 1188-89. Therefore, FOFs 72 and 81 were supported by substantial evidence and were not clearly erroneous. See In re Doe, 95 Hawaiʻi at 190, 20 P.3d at 623.

(3) There was clear and convincing evidence to support COL 13, that the Permanent Plan was in the best interest of the children. A family court's "determination of what is or is not in a child's best interests is reviewed on appeal for clear error." Id. (citation omitted). At a termination of parental rights hearing, the Family Court must determine whether there is clear and convincing evidence to support its conclusion that: the "proposed permanent plan is in the best interests of the child." HRS § 587A-33(a)(3). A permanent plan must state whether the permanency goal will be achieved through adoption, legal guardianship, or permanent custody, and the plan must document a compelling reason why legal guardianship or permanent custody is in the child's best interests if adoption is not the goal. HRS § 587A-32(a)(1) and (3)(A). The Family Court must presume that it is in the best interest of the child to be promptly and permanently placed with responsible and competent substitute parents and family in a safe and secure home, and the court must give greater weight to the presumption that the

6

permanent plan is in the child's best interest, the younger the child is upon the date of entry into foster custody. HRS § 587A-33(a)(3)(A) and (B).

The Permanent Plan proposed adoption of EJ, along with SJ, by the paternal grandmother of SJ (**Paternal Grandmother**). FOFs 26 and 34. EJ was less than three months old when placed into foster custody on December 3, 2018. FOFs 38 and 41. Thus, the Family Court was required to apply greater weight to the presumption that it was in EJ's best interests to be promptly adopted and placed with responsible and competent substitute parents. See HRS § 587A-33(a)(3). The children were placed with Paternal Grandmother on September 17, 2020, and were still with Paternal Grandmother at the time of the trial on July 1, 2021. FOFs 26, 27, and 34.

In support of his claim that adoption was not in EJ's best interest, Father asserts that the DHS social worker, the CASA, and the CASA Program Social Worker "confirmed" at trial that Paternal Grandmother demonstrated favoritism for SJ. The record reflects that Jackson testified to one early instance of favoritism by Paternal Grandmother towards SJ (who was Paternal Grandmother's biological grandson) that Jackson personally witnessed. However, Jackson also testified that Paternal Grandmother was not aware it happened, corrected the situation, acknowledged and apologized for it; and that Jackson did not thereafter witness any favoritism reoccur during multiple contacts with the family. The CASA Program Social Worker testified that, along with Jackson, she and the CASA also observed this incident of favoritism by Paternal Grandmother toward SJ at the initial visit; however, the CASA Program Social Worker did not see any additional incidents in her contact with the family. We do not conclude that a single incident of favoritism compels a conclusion that a permanent plan of adoption by Paternal Grandmother is not in EJ's best interest. See HRS § 587A-32(a)(1) and (3)(A).

Father also argues that the change in the CASA's position from supporting legal custody to adoption occurred with the change in the CASA, and this change supported reversal of the

7

termination of his parental rights.  Father provides no legal grounds to support this argument, and we do not address it.  See RECPA Rule 11(a)(4).

Father also asserts that the new CASA did not make a written report, and thus should not have made a recommendation to the Family Court because she was too new to the case, where she was appointed five weeks prior to trial on the Motion to Terminate Parental Rights.  The record reflects, however, that the new CASA testified that based on her review of the case, she did know enough about the case to make recommendations to the court.  Father has not pointed to anything in the record to suggest the new CASA was incapable of making recommendations to the Family Court.  Father provided no legal grounds to support this argument.  See RECPA Rule 11(a)(4).

All of Father's arguments supra go to the weight of the evidence, evaluation of credibility of witnesses, and resolution of conflicts in the evidence -- areas which are within the exclusive province of the Family Court as the factfinder, not the appellate court.  See Matter of JK, 149 Hawaiʻi at 409-10, 491 P.3d at 1188-89 (reviewing court defers to the trier of fact's evaluation of the evidence, including matters of weight and conflicts in the evidence).

Here, the record contains substantial evidence from which the Family Court could reasonably conclude that it was highly probable that the Permanent Plan of adoption was in EJ's best interest.  See id.  Jackson testified that the permanent plan goal of adoption was in the best interest of the children because Paternal Grandmother, who was the resource caregiver of the children and prospective adoptive parent, wanted to establish a permanent home to ensure the children were not looked at differently and to provide them with things that the children were only entitled to through adoption as opposed to guardianship.  Jackson opined that adoption was better than guardianship because it is a more permanent solution, adoption is a lasting bond whereas guardianship dwindles or expires upon the children becoming adults, and the children deserve stability.  The Family Court found Jackson credible.  FOF 91.  The Family

Court also found that EJ and SJ were "thriving" in the care of Paternal Grandmother.  FOF 47.  The evidence in the record was not sufficient to rebut the presumption that the permanent plan of adoption was in the best interest of EJ.  HRS § 587A-32(a)(3)(A) and (B).  Thus COL 13 was not "clear error."  <u>In re Doe</u>, 95 Hawaiʻi at 190, 20 P.3d at 623.

For the foregoing reasons, the Order Terminating Parental Rights, filed on July 1, 2021 by the Family Court of the First Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, February 28, 2022.

On the briefs:

Herbert Y. Hamada
for Father-Appellant

Kurt J. Shimamoto
Deputy Attorney General
for Petitioner-Appellee

Cheryl Y. Arakaki
(Arakaki & Eugenio, LLLC)
for Court Appointed Special
Advocate Program

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge